Good morning, Your Honors, and may it please the Court, my name is Andrea Ringer, and I, along with my colleague, Marco Pellitti, represent the petitioner in this case, Patricio Bringas-Rodriguez, under the supervision of Mary Christine Sangheila. Your Honors, this Court should remand for two reasons. Let me ask you before you start, are you going to divide the time with your co-counsel, or is it just you? Yes, Your Honor, I'll be speaking for the first seven minutes, my colleague will be speaking for six, and then we'll be reserving two minutes for rebuttal. Okay, thank you. Your Honors, this Court should remand for two key reasons. First, the agency failed to consider important evidence establishing that Patricio suffered past persecution, and second, the agency abused its discretion in failing to meaningfully consider the fact that Patricio was diagnosed with HIV prior to his board appeal. Your Honors, this Court should remand because Patricio suffered past persecution. Patricio was sexually assaulted for nearly ten years by family members. His persecutors never called him by his name, instead they referred to him by derogatory terms relating to his sexual orientation. At least one of his attackers even admitted that he was motivated by his sexual orientation. Yet, the agency did not consider any of this evidence, it did not, certainly did not mention it when it concluded that pedophilia was the only motive here. This Court in Parisi-Bova explicitly explained that it's extremely rare for a persecutor to admit its motive, and Patricio provided exactly that. This error calls into question the entire reasoning of the agency's opinion. Furthermore, the agency, it compounded its error by ignoring evidence that distinguishes this case from Castro-Martinez and shows that the government was unable and unwilling to protect Patricio. Your Honors, this case is different from Castro-Martinez for two main reasons. First, the attacks in this case occurred in very different context. Unlike Castro-Martinez, who was attacked by strangers on the street, Patricio was, he was sexually assaulted by family members and neighbors for nearly ten years. The Board's precedential decisions in matter of ARCG and matter of SA, you know, they show the unique issues that are presented in a family context. And they certainly do here. And this difference in form. Let's suppose, let's suppose that we regarded, let's suppose that we would accept the fact that his attackers took, attacked him in part because of his sexual orientation and not simply because they were pedophiles. How does that demonstrate the complicity of the Mexican government and that he is going to be persecuted by the government or with the government's acquiescence on account of his sexual orientation? I'm not sure the persecutor's motive necessarily is what shows the government's complicity and the abuse. Right, but don't we have to have some kind of government complicity in this? Of course. So Castro-Martinez. So what's the government's complicity here? Patricio testified that childhood homosexual friends of his from Veracruz informed him that they were also persecuted or they were also raped on account of their sexual orientation and they sought state protection to no avail. Yet this court in AFRI explained that this is highly relevant to what the government could or would have done, which is all that Patricio needed to establish. Do we know, do we know anything more about the friends? We know that Patricio learned this while he was living in Kansas, which was at the age of 12 and then from the age of 14 to 17. Do we know how he learned it? Through a telephone call, by email? I don't think we know, Your Honor. We don't have any of the friends identified? No. Okay. We don't know what police station they went to? Correct. We don't know what they told the police? So we have no reason, and the IJ credited Mr. Brangess, so we have no reason to doubt that he is telling us the truth. That is that he was told by friends. But isn't the BIA entitled to say that just isn't sufficient information for us to conclude that an entire government would overlook the kind of horrible things that were done to this child? Certainly the board is entitled to make such a finding, but it did not do so here. It did not consider this in its analysis. The immigration judge explicitly said that it did not find past persecution because he failed to seek protection from the authorities, and the evidence did not show that the police would not have offered some protection. Well, I'm looking at page 2 of the BIA's decision, and after citing Castro Martinez, the BIA says, the respondent here has not demonstrated that the abuse was inflicted by government actors or that the government was unwilling or unable to control his abusers. You're right, Your Honor. The Board of Immigration Appeals decision does say that. I was referring to the immigration judge's opinion. Okay, but the BIA is the opinion that we're ruling. So the BIA did not go through, didn't parse all of the evidence and say, well, this we accept, this we reject, or this isn't sufficient to satisfy the burden of proof here. But the BIA has entered a conclusion that the government, that we have a failure of proof here. It does appear so, yes, Your Honor. Doesn't that mean that we can only overturn that if there's, if the evidence compels a contrary result? Well, the standard of review is, yes, that the evidence needs to compel the conclusion. However, when the agency ignores important evidence, this Court, you know, How do we know that the agency ignored it? So does the agency have an obligation to refer to the evidence? No, Your Honor. But it, you know, this Court explained enough for you that when an agency does not consider this sort of evidence, it errs in its analysis. And in the Board of Immigration Appeals decision, I believe it says that the Board agreed with the immigration judge's determination, and then it, you know, it merely said that there's no, that it doesn't find that the government was unable or unwilling, and it cites De Castro-Martinez. Let me go back, if I can, to Castro-Martinez, because that's the case you need to sort of get out from under. Was any evidence presented by the Petitioner in Castro-Martinez of having, of anyone going to the police and being rebuffed? I don't believe so, Your Honor. But, I mean, I'm trying to figure out if there's a valid distinction here. He does present evidence. He says that friends of his went to the police complaining of a homosexual attack and were laughed at. And I'm trying to figure out if there was any such evidence in Castro-Martinez. I found none. There were contentions that the police would not protect, but I don't think there was any evidence presented. So the question for me is whether or not this was enough evidence. It's a version of Judge Bybee's question. Is there enough evidence here from which the BIA should have concluded that the government was unwilling or unable to control? This is a hard one for me because it seems to me likely, based upon what I've seen in other cases as well as the evidence in this case, it seems to me likely that the police would not have protected him. But I'm not sure that that's so because the evidence we have here is so fragmented. What do I do with that? Your Honor, I'm going to answer your question and then pass off to my colleague. Please answer and we'll make sure your colleague doesn't get cheated out of his time. This is not the only evidence in the record. You know, if this court were to look to pages 281 through 93, it would also see evidence that the government is, has, that, it would see evidence that there's domestic, that domestic violence is pervasive in Mexico. I'm sorry, I didn't hear what you said. Pages 281 through 93 of the record. The state report explains that domestic violence is pervasive, intrafamily violence is pervasive, and rape victims rarely report because of the widely perceived views. That's true in the United States. I mean, that's just, that's just the nature of, of intrafamily domestic violence. It's a horrible thing. But much of it doesn't, goes unreported in this country. And that, that, I'm afraid that doesn't really advance anything very specific about Mr. Bringas and about how the police would have responded had he gone to them and said, I've been raped as a child repeatedly. This evidence speaks to whether or not it would be futile or subject him to further abuse were he to seek state protection. It's a pretty severe indictment of an entire country to say that no police in Mexico would have responded to the rape of a child. I don't believe that is, that is the standard, Your Honor. I mean, the evidence, it strongly suggests that the government would be unable or unwilling to protect him. How can the evidence strongly suggest when all he has is unknown friends who told him that? It's all hearsay. They, they went. We have no idea what they said. We have no idea what the police said. We don't know what the circumstances were. But that's not really very strong evidence, is it? I think it is strong evidence. And, you know, the State report also explains that the judiciary is ineffective and inefficient and corrupt. There, it cites to it 1 to 2 percent conviction rate. And when Patricio was looking at the prospect of reporting his persecutors and being put back into that same abusive home, were his report to, you know, not afford him relief, he certainly was looking at further risk. Okay. Let's hear from your colleague. I forget how much time you were saving for him. Six minutes. Six minutes for him and then two minutes for rebuttal. You could put eight minutes on the clock. Thank you. Good morning, Your Honors, and may it please the Court. My name is Marco Pleto, and I will be continuing arguments on behalf of Mr. Patricio Bringas Rodriguez. Your Honor, the Board abuses discretion here in failing to remand in light of Patricio's HIV diagnosis, which occurred after the proceedings before the immigration judge for three key reasons. First, the agency deviated from its policy memorandum, which states that HIV shall be considered in cases of asylum and withholding of removal. Second, Patricio's HIV diagnosis materially affects his eligibility for relief, as it affects the reasonableness of his internal relocation within Mexico and places him in a more vulnerable subgroup. And finally, the Board erred because it failed to consider Patricio's HIV diagnosis in light of the existing record. Beginning with my first point, the agency here has a memorandum that established the policy of the INS and the agency here that HIV shall be considered in cases of asylum and withholding of removal. At pages 25 and 27 of the record, Patricio informed the Board that he had been diagnosed with HIV and that this put him in a more vulnerable position and affected his fear of future persecution. And the BIA, on page 3 of its decision, has referred to this evidence and referred to his HIV status. Yes, Your Honor, but... So it didn't ignore it. It decided not to decline to remand it to the IJ, but that's not ignoring it. Yes, Your Honor. Here, our claim is twofold. First, it's that the agency didn't meaningfully consider Patricio's HIV diagnosis. It did acknowledge that he had HIV, but it didn't meaningfully consider his HIV diagnosis, as that court has construed that term in Zal versus Holder and Mohammed, as cited in our brief. What the BIA should have done is that it should have looked at both the favorable factors and if there were any unfavorable factors, and explained why his HIV diagnosis didn't affect the outcome of his case. Here, the agency didn't do so. And because the agency didn't meaningfully consider how his HIV status affected his eligibility for relief or explain any deviation from its policy that was established in 1996, its action here was arbitrary and capricious. The BIA says that Mr. Bringas had not provided any additional country conditions evidence or specific arguments regarding how his status as an HIV-positive homosexual changes the outcome of his case. Did you provide additional country conditions evidence or arguments regarding his status? Your Honor, Patricio did not provide additional country conditions evidence. What he did provide at page 25 of the record was an argument that this put him in a more vulnerable position and that it affected his fear of future prosecution. But if he didn't provide any evidence, what grounds would you have for remanding to the IJ for findings of fact? Your Honor, as this court said in Zal versus Holder, it's necessary to consider all of the evidence in its entirety. There was already evidence in the record at page 299 and at page 295 that individuals with HIV are subjected to mistreatment and discrimination within Mexico. At page 299 of the record, there is evidence that a leader of a network of people affected with HIV and AIDS was subjected to abuse and detention by police. Also at page 295 of the record, there's evidence that individuals with HIV are discriminated in the military. So thus, there was already evidence that individuals with HIV are subjected to mistreatment in Mexico and the board should have considered Patricio's HIV diagnosis in light of what was already before the Board of Immigration Appeals. Second, Your Honor, Patricio's HIV diagnosis materially affects his eligibility for relief because it affects the reasonableness of his internal relocation. In Boyer-Sedano versus Gonzalez, this court held that no reasonable fact finder could conclude that it would be reasonable for an individual from Mexico who both had AIDS and was gay to internally relocate because of the social and cultural constraints that would be attendant to such an individual within Mexico. Here, Patricio is under similar circumstances. He has HIV, is a homosexual, and is also from Mexico. And thus, those same cultural constraints and social constraints, as well as his health status, are implicated by his new HIV diagnosis. Does that mean that everyone who is from Mexico and suffers from HIV and is gay is entitled to asylum in the United States? No, Your Honor, it does not. As the memorandum states, the limiting principle is that an individual has to argue that they will be persecuted on account of their HIV or AIDS status. Right, but if you have nothing more than a generalized status, that would suggest then that everyone who is HIV and homosexual and lives in Mexico would be entitled to asylum because you've offered no specific information here. It's all general. Well, Your Honor, what needs to happen here, as we argue, is that really what the purpose of Patricio's motion was, was that he needed to have his motion to remand granted so that he could provide further facts as to why he could establish the elements of asylum and withholding of removal. So it wouldn't be the case that just any individual with HIV and was gay from Mexico would be automatically eligible for asylum and withholding of removal. As the memorandum states, they would still have to meet all of the elements of asylum and withholding of removal. And as this Court has stated in Caruni v. Gonzalez, this Court already noted that the agency has noted that HIV and AIDS may be considered a particular social group. And here what we're arguing is that Patricio's HIV diagnosis and his homosexuality placed him in a more vulnerable subgroup. In Caruni, this Court looked at an individual from Lebanon who was homosexual and had AIDS, and he claimed that he would be persecuted on account of his homosexuality and his AIDS status. And there what the Court really looked at was that because this individual had AIDS, it would be more likely that somebody would be able to find out that the individual was homosexual because if they found out that they had AIDS, then they would go on to persecute the individual on the basis of their homosexuality because in Lebanon people essentially associate AIDS as a gay disease. Here our amicus brief has also shown that in Mexico it's the same circumstance. In Mexico, individuals treat HIV essentially as a gay disease. So here Patricio is under similar circumstances in that if he is returned to Mexico, he is now part of a more vulnerable subgroup because if someone finds out that he has HIV, they will essentially impute homosexuality on him, and now there is an additional basis on which he could be persecuted. Other circuits have taken this approach also. In Rosilas Camarena, the Seventh Circuit held that the Board erred where it overturned the IJ's conclusion that an individual from Mexico would be persecuted on account of that individual's HIV and homosexuality. And so thus other circuits have also begun to take this approach that HIV is something that needs to be considered, and it affects the eligibility for relief. The Second Circuit has also taken this approach, and in fact the Second Circuit has gone even further. The Second Circuit held that the agency erred where it failed to consider the individual's HIV diagnosis where the individual there claimed that they would be persecuted on account of their homosexuality and their HIV status. There the agency found that the individual would not be persecuted on account of their homosexuality, and the Second Circuit found no error with that determination, and yet still remanded because the agency there failed to consider just the sole argument that he would be persecuted in part because of his HIV status. The Ninth Circuit has also taken a similar approach in Ineb versus Holder within the context of the Convention Against Torture claim. In Ineb versus Holder, this Court held that the agency erred where it failed to meaningfully consider and analyze the petitioner's claim that he would be tortured on account of his AIDS status if he were returned to Nigeria, where Nigerian prison officials would torture him because of his AIDS status. Okay, your time is rapidly running. Why don't we hear from the government? You've got 17 seconds left, but we'll put two minutes back on the clock. Thank you, Your Honors. Good morning, Your Honors. May it please the Court. John Blakely on behalf of the Respondent and Attorney General of the United States. Your Honors, there's no dispute that this is a very sad case, and there's no dispute that Mr. Pringles Rodriguez suffered from horrific abuse. But that doesn't end the discussion at all. The government doesn't grant relief to everyone who's lived through horrific conditions. Rather, the government has set parameters for who will be entitled to relief. In this particular case, we're talking asylum. And Mr. Pringles Rodriguez has not satisfied any of those parameters for this case. And, Judge ---- Let me ask you, what do you say, though, getting right to one of the critical issues here, is the assertion that the immigration judge said there was no evidence of the government's unwillingness. And yet there was some evidence, and we've talked about it a little bit here, in the nature of reports that were made to the petitioner. And so what do you do with that if that is what was stated by the immigration judge, that there was no evidence when, in fact, there was? What do we do with that? Well, I think it's important to recognize the context in which that statement, no evidence was made. This is an oral decision issued by an immigration judge. And the only evidence that we do have, I'd like to read from you because I think it's very important. This is on page 200 of the record. He says, I know that because when I was living in Kansas, a couple of my friends told me that they got raped, they got beat up like abuse, and they went to the police and they didn't do anything. They even laughed in their faces. That's the total of all the evidence that we have that says anything more than what we had in Castro Martinez. That's the only differentiation between this case and ---- Well, that's not the only evidence. Although this may be duplicative, we have his affidavit, the police are no help, cannot protect me, they wouldn't do anything to my abusers, they would laugh at me and tell me I deserved what I got because I was gay. This happened to friends of mine in Veracruz. Now, that may be the same episode that he's referring to. It's a little unclear. My guess is it's the same episode. Certainly, Your Honor, but it suffers from the same defect, that it's no actual evidence of are we even talking about the same thing. Because what we're talking about from Mr. Rodriguez is horrific rape of a child. And what we're talking about in those cases is something that may be rape, but of who we don't know. We don't know where those friends were. We don't know how old they are. We don't know anything about it. So what we need from, it's no evidence of any value is what the immigration judge could have said. Because there's nothing here to suggest that the police in Veracruz and Tres Falles, I think, is the actual town. There's no evidence that the police there, if they were told that a 4-year-old child was being raped, wouldn't do something. In fact, I think that that's reflected also by the approach of the rapists in these cases. Okay? In every circumstance, the rapists said don't tell. But look at the circumstances of a 4-year-old child who's going to be raped. The police may say we would have taken care of it. But it's unrealistic to expect that the 4-year-old child would have gone to the police. So we end up with a null set if you insist that the 4-year-old child go to the police in order to show the unwillingness of the police to protect. So is this just a plain old catch-22 and he loses no matter what? I don't think that it's completely a catch-22, Your Honor. I don't think that the rape of a 4-year-old child is something that's completely undiscoverable. Well, we know from our own experience here in the United States that this stuff goes unreported all the time. And it is, of course, totally fantasy land. And I don't hear you responding otherwise to me to expect that the 4-year-old would report it. Absolutely, Your Honor. There's no expectation. So how are we going to get evidence beyond what we have here of the police unwillingness to do anything about this? So, I mean, if we insist on more than what we've got, I think this just goes by the Board, we never can do anything about it. Well, I think what this Court said in Castro-Martinez is there has to be something else about the societal approach to the persecution. Yeah. Or I'm now just quoting from Castro-Martinez, showing that others have made reports of similar incidents to no avail. Well, the question is, how tightly do we read the word similar? I mean, he's got friends who say, we were raped and the police laughed at us. The friends could have been 60 years old, Your Honor. Could have been how old? They could have been 60 years old. They could have been 40. So you're saying his friends are 60 years old now. I think it's more likely that they would have been more or less his age. Your Honor, we're talking about the evidence on the record. That's all we have. And I'm just saying it could have been. When you say friends, it could be anyone. It could have been a 4-year-old that reported, in which case we have a 4-year-old who's now reported. But what we have to evaluate is the evidence that was before the immigration judge, and we have to compare it to what Castro-Martinez said, this Court said in Castro-Martinez, that it should expel. You know, Castro-Martinez might actually be wrong. I think this case is distinguishable, although narrowly. And as I'm sure you recognize, I was on the panel in Castro-Martinez. We found it a very difficult and very close case, as evidenced by the fact that we came out with one opinion and then we substantially amended the opinion. We viewed Castro-Martinez as an exceptionally close case, and this case is somewhat different in that there is at least some evidence of individualized report to police. The evidence is exactly as you describe it, not very particularized. And so for that reason, Your Honor, I'd ask that this Court find that Castro-Martinez controls, that there's no evidence here to establish that the government of Mexico is unable or unwilling to protect a young child from the rape, from any rapist. And in addition to that, the other aspect of the past prosecution in this case is the on-account-of ground, which the Board found that Petitioner here failed to establish, that this persecution was on account of a protected ground, and for the primary reason that an individual who rapes a 4-year-old child is a pedophile. Well, that's what the IJ said. The BIA said nothing about that. But what the Board said was that the Board said there's, that Mr. Bringis-Rodriguez said failed to establish there's past persecution on account of a protected ground. And so when it says that, it was also validating that portion of the ---- It then went on to cite only to the unable or willing argument, but there's nothing to ---- Well, if that's your argument, I totally disagree with you. He's got lots of evidence that this is happening to him because he is gay. As a 4-year-old child, he was raped because he was gay? Well, he talks about the names they call him and so on. I mean, it's preposterous to me to think that every 4-year-old male is going to be raped simply because they're pedophiles. Based on what we have here, it's clear that they're doing this because he is perceived as gay. Now, I think that what the Immigration Judgment Board have both done here is applied common sense to the situation, that the rape of a 4-year-old child is only done for one reason and one reason only, and that's a pedophile engaged in despicable acts. Okay? That has nothing to do with the child, Your Honor. Nothing. Not one little tiny bit. And as far as the pejoratives that are used, they are vile. And I do disagree with them. But at the same time, if we were talking about a situation where one African-American man was beating up another African-American man and referred to that individual using the N-word, okay, we would not say he was beaten on account of his race. And that's what we have in this case. You know, those situations are so distinct, I think you are just blinking reality. If you have numerous males raping a 4-year-old child and then continuing to do so while indicating that he is, and calling various names referring to his sexuality, that that's the equivalent of beating somebody up and using the N-word as you do it. I think those are just so totally separate that you're just not dealing in the real world. Well, I'd like to explain myself a little bit more then, Your Honor. What we have here is all individuals who are engaged in homosexual activity, to the extent that it's male-on-male sexual activity. And they're forcing it on somebody who is not receptive to that activity. And in doing so, they're throwing these pejoratives around, and in each case on a child, in many cases on a young child who does not necessarily have their sexuality developed yet. And so to put the blame on the child for some characteristic that they may or may not have at that point in their life is putting too much blame on the child. The credit or blame goes with the... Wait a minute. Why are you talking about blame? I'm talking cause and effect. That is to say, perception of effeminate nature on the part of the child. His testimony is that I was perceived as effeminate. And that was the reason why they attacked me rather than others. So I'm not blaming the child, nor do I think you are. Not at all, Your Honor. Not in the most remote possibility I would not blame the child in this case. But I think what we have here is just an incredibly horrific family dynamic in which the sexual abuse of a child is continued over and over again. I mean, I think the implication from this situation of the cousins, the uncle, the cousins, you know, all going after this child is, I'm guessing that the uncle had engaged in the same activity with the cousins and then the cousins aged up to the point... Anna, what are you basing that quote guess? I'm just, it's a presumption looking, it's common sense application of the facts of the situation. You so insist on us paying attention to what's in the record and then you say you think the uncle sexually abused the cousins. You've got nothing. I have nothing to support that other than it's an inference drawn from the facts that so many people in the same family are willing to have sex with a young child. It says to me that it's just a gross family dynamic. And it probably didn't just start with the sexual activity with Mr. Bringus Rodriguez. It probably started long before that. That's the common sense of my experience with other pedophiles and with the prosecution of pedophiles and the perpetuation of that sort of activity. And so does it have a whole lot to do with this case? No, it doesn't. But I think you have to look at the use of the pejoratives to describe Mr. Bringus Rodriguez in that context of why would they have called him this name? Was it only that he was effeminate? I think it's common sense that that's not the reason that they used those, that they would have used those names while they were engaging in this activity. It was just gross, despicable activity, and we should label it as such. Well, of course we are labeling it as such. The only question is why is this occurring, and is the fact of his effeminate appearance or manifestation contributing to it? That's what we're talking about. None of us is arguing that it's anything other than despicable. Certainly, Your Honor. And so this Court could deny the petition for review on either the fact that he failed to establish that this was on account of that, that this was one central reason, and it could also deny it because it's failed to establish that he's failed to establish that the government is unable or unwilling. And not just failed to establish, but the standard of review here is that he has to in the Board's conclusions in this case. And then we also have the issue of a well-founded fear of future persecution, which is just completely – which he has failed to establish here. And then if I can also address the issue – Well, the BIA didn't reach that question, correct? The BIA did not reach the question of well-founded fear of future because –  That is to say, because the BIA found no persecution on account of a protected ground, it did not reach the well-founded fear based on that presumption because it didn't find – didn't have a basis for the presumption. It didn't afford the presumption, Your Honor, but it still evaluated whether there was a – whether there was a well-founded fear of persecution based on the no pattern or practice of persecution. What was the age at which the child was first – Mr. Brinkus was first abused? Four-year-old and four-year-old. And how long did the abuse continue? Until he was 12, and then he was – he left for the United States. And then returned from Kansas when he was what, 14, 15? And then he returned for – and then – And he was abused when he returned? Yes. Okay. Do we know at what point they referred to him by gay slurs? I don't think the record defines exactly. It does reference before – But he testifies that he realized at an early age what his sexual orientation was. So if the gay slurs were used at sort of any time in a very long period, that is, eight years before he goes to Kansas, several years after he returns from Kansas, then we may have somebody who is perfectly aware of his own sexual orientation, able to define it, who is being called by these names, in which case we wouldn't have just a four-year-old. We might have a 14- or 15-year-old who is aware of his sexual orientation and is being called these names. So then we just have to deal with what are the implications of that. That does seem to be at least an inference that it is on account of sex, or on account of his sexual orientation. So we will then have to deal with whether you've got government complicity here. Yes. But even before you get there, I would say that it would have to be – it could be a possibility that that's part of it. But what he needs to do is he needs to present evidence that compels a reversal of the immigration judge's conclusion here, which was that it was not on account of his sexual orientation. It seems to me that the strongest case for the government deals with whether the government of Mexico is complicit in the kind of persecution that he is suffering, not whether he may have suffered persecution on account of his sexual orientation. I agree with that, Your Honor. He was credited by the IJ. We have no reason to dispute that he was told during these acts that he was being persecuted because of his sexual orientation. That's correct, Your Honor. Does that mean you abandon the argument as to he was not attacked because of a perceived homosexuality? Absolutely not, Your Honor. Okay. You just think it's a weaker argument? I think the other one is significantly stronger, yes, Your Honor. You can say it that way. You can also say it's a weaker argument. I notice I'm out of time, unless you have further questions, Your Honor. Okay. You've saved two minutes. Or rather, you didn't save two minutes, but you have two minutes. Thank you, Your Honor. Your Honor, I'd like to make three points on rebuttal. First, this case is distinguishable from Castro-Martinez insofar as Patricio has provided evidence of what the government would have done had he reported the abuse. He provided evidence that his friends reported in Veracruz to no avail. And here, because Patricio ---- Can the BIA make a judgment about how strong that evidence is? No, Your Honor. Nowhere within the agency's decision, either at the IJ or at the ---- Let me raise the question very carefully. Can the BIA make a judgment about the strength of that evidence? Your Honor ---- I understand you want to argue that the BIA didn't do such. I want to know whether the BIA is entitled to make a judgment about the strength of the evidence he's presented. Doesn't the BIA have to make a judgment as to whether he's met his burden, even if it agrees with the IJ that he is to be found credible? Yes, Your Honor. The board is able to determine whether Patricio met his burden. And here, what Patricio did is he provided evidence that his friends reported to no avail. And because the IJ found him credible, any reasonable inferences that are to be drawn from the record should be drawn in his favor, as this Court has said in Zhang v. Ashcroft and Rinaldi. Does the BIA then have to accept at face value the hearsay that he has given or that he's offered? Well, Your Honor, what we're ---- Have to accept the hearsay for the truth of the matter. Your Honor, it does not have to accept it. And really what we're arguing here is that as in Ornelas-Chavez, what the agency should have done is it should have considered it. And if the agency thought that Patricio's evidence was insufficient, then it should have considered the evidence and said this is insufficient to distinguish this case from Castro-Martinez. However, it would not have been able to do so because we've demonstrated that this kind of evidence was specifically identified in Castro-Martinez and is such that it could compel the conclusion that the government is unable or unwilling to help him. And here the EIJ had a duty to develop the record, as this Court has said in Shafir v. INS. And so if it was going to question this highly probative testimony, then the EIJ should have developed the record. Second, Your Honor, here no judicial body has yet meaningfully considered Patricio's HIV diagnosis and how it affects his eligibility for relief. Here we've demonstrated that it affects his eligibility for relief and the agency didn't meaningfully consider it. And finally, Your Honors, here the government does not concede that Patricio was raped on account of his homosexuality. However, the evidence here is sufficient that at page 217 of the record, there's a confession by his uncle that he raped him because of his homosexuality. Also, as Judge Fletcher pointed out, at page 262 of the record, Patricio provided in his affidavit that his friends in Veracruz reported the abuse. And finally, at pages 305 and 307, there's evidence that others perceived Patricio to be gay and also that his abusers used gay slurs against him. And for the foregoing reasons, we ask that this Court reverse and remand the Board's decision. Thank you, Your Honors. Thank you. Thank both sides for their helpful arguments. The Court would particularly like to thank the students from UC Irvine for their helpful arguments. A nice debut. But thank both sides for their helpful arguments. The case of Brinkus-Rodriguez v. Holder now submitted for decision.
judges: Settle, Fletcher, Bybee